UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LADON S. CHURN,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No. 1:21-cv-631

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF Nos. 6, 7.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Yuhaz. The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation, access to the courts, due process, and equal protection claims against the remaining Defendants. The following claims remain in the case: Plaintiff's First Amendment interference with mail claims against Defendants Karber, Christiansen, and Washington.

The Court will also grant Plaintiff's motion to amend and supplement the complaint. (ECF No. 8.)

## Discussion

**I.      Pending Motion to Amend and Supplement the Complaint**

Pending before the Court is Plaintiff's motion to amend and to supplement the complaint.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

To the extent that Plaintiff seeks to amend the complaint, he asserts that Defendant Washington is the first party he intended to sue rather than the Michigan Department of Corrections (MDOC). (ECF No. 8-1, PageID.59.) Under Fed. R. Civ. P. 15(a), a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. Although Plaintiff names the MDOC as a party both in the caption of the original complaint (ECF No. 1, PageID.1) and the list of parties (*id.*, PageID.3), he also states that Washington is the "princip[al] agent" for the MDOC who "is responsible for adopting [the] rules, policies and regulations" that he challenges (*id.*, PageID.4). Plaintiff further asserts that he seeks declaratory and injunctive relief against the agency. Plaintiff clearly pursues redress against the agency by suing Washington under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908). The Court will grant Plaintiff's request to amend the complaint and order the Clerk to replace the MDOC with Washington as the first named Defendant.

The proposed supplemental complaint adds new allegations against the two principal Defendants identified in the initial complaint. Under Rule 15(d) of the Federal Rules of Civil Procedure, a party may seek, and the court may permit supplemental pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.* A motion to supplement a complaint under Fed. R. Civ. P. 15(d) is properly addressed to the discretion of the trial court. *Allen v. Reynolds*, No. 89-6124, 1990 WL 12182, at * 2 (6th Cir. Feb. 13, 1990) (*citing Otis Clapp & Sons, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985)). While leave to permit a supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action. *Planned Parenthood of S. Cal. v. Neeley*, 130 F.3d 400, 402 (9th Cir. 1997). Here, the allegations in the proposed supplemental complaint resemble many of the allegations in initial complaint and thereby represent a continuation of the conduct alleged.

4

The interests of judicial economy are best served by permitting the supplemental pleading. Accordingly, the Court will grant Plaintiff's motion (ECF No. 8) and order the Clerk to docket the proposed supplemental pleading (ECF No. 8-1) as Plaintiff's supplemental complaint.

## II.     Factual Allegations

Plaintiff is presently incarcerated with the MDOC at the Baraga Correctional Facility (AMF) in Baraga, Michigan. The events about which he complains occurred at Ionia Correctional Facility (ICF), in Ionia, Michigan. Plaintiff sues MDOC Director Heidi Washington. Plaintiff also sues ICF Mailroom Staff Members Steve Karber and Diane Christiansen as well as ICF Grievance Coordinator Adam Yuhaz.

Plaintiff alleges that Defendants Karber and Christiansen violated and exploited ambiguities in MDOC policies related to prisoner mail on several occasions. Plaintiff further contends that at least one MDOC policy violates his constitutional rights. For those reasons, Plaintiff incoming and outgoing mail frequently has been obstructed.

According to the complaint, in July 2018, Defendants Karber and Christiansen withheld a *New York Times* article about a book discussing the letters Nelson Mandela wrote to his children while he was incarcerated. Plaintiff asserts that only that article was removed, and he was given neither a reason nor due process. Presumably, he intends to convey that he was not given a hearing. Moreover, Plaintiff contends that the article did not violate prison policy. He alleges that this interference with his mail led to tension between Karber and Christiansen on one side and him on the other.

While disputing the missing article with ICF staff, Plaintiff learned in August 2018 that Karber and Christiansen stopped more of Plaintiff's incoming mail in May or June 2018 without notifying him. Specifically, Karber and Christiansen withheld the typewritten copies of two manuscripts, both originally written by Plaintiff. Plaintiff wrote "In My Demise," which chronicles

5

his experience in long-term solitary confinement, and "Dopefiends," an autobiographical account about his upbringing among a family affected by heroin addiction. Plaintiff sent copies of both manuscripts to typists, who later sent typed copies back to him by mail. Plaintiff asserts that Karber and Christiansen provided Plaintiff neither his mail nor a notification that they had withheld his mail. He asserts that neither manuscript, sent as mail, violated policy. Plaintiff contends that he learned about the withheld mail only after corresponding for several weeks with both typists, the mailroom, and prisoner-counselor (PC) Turner (not a party). Plaintiff asserts that he also filed grievances, but Defendant Yuhaz failed to adequately respond to Karber's and Christiansen's conduct.

Plaintiff believes that Defendants Karber and Christiansen discriminate against "Black Americans." Plaintiff identifies himself in the complaint as a "Black American," and he asserts that Karber and Christiansen are Caucasian. He alleges that he learned that Karber and Christiansen did not impede the mail of Caucasian prisoners who sought to write and transact with others outside of ICF. Plaintiff asserts that Karber falsified notices apparently providing incorrect dates of those notices and inaccurately portraying the content of Plaintiff's manuscripts.

Plaintiff alleges that PC Turner, who is a "Black American," eventually conducted the hearing after Plaintiff challenged the rejection of his own typewritten manuscripts as incoming mail. Turner purportedly stated that there was nothing wrong with Plaintiff's creative writing but told him, "'They just don[']t want you doing that here." (Compl., ECF No. 1, PageID.11.) Turner read the articles that Karber and Christiansen rejected. He concluded that there was nothing violating policy but told Plaintiff that "'they' already told me, '[W]hatever you do . . . don[']t give the mail to [Plaintiff].'" (*Id.*) Although the complaint is not altogether clear, it appears that Turner upheld the rejection.

Plaintiff allegedly sought to have his rejected mail—his typewritten manuscripts—sent to a third party outside the prison in compliance with policy. Plaintiff asserts that he had sufficient funds in his prisoner trust account to pay to send the mail to his intended recipients. Nonetheless, his request was rejected purportedly because he lacked sufficient funds. Plaintiff allegedly contacted Defendants Karber and Yuhaz multiple times, but the manuscripts had not been sent by December 2018. In January 2019, he asserts that he "received a suspicious 'receipt' purporting" that the manuscripts were sent out of the facility in August 2018. (*Id.*, PageID.15.)

In the months that followed, publishers from *Solitary Watch* contacted or attempted to contact Plaintiff expressing interest in publishing one of his manuscripts. First, Defendant Karber rejected a letter from a publisher in early February 2019 apparently because it may have contemplated a contract of some kind, and therefore could relate to a business enterprise.[2] Plaintiff asserts that in late February 2019, Karber rejected a letter from a *Solitary Watch* copy editor named Valerie Keibala again on the grounds that the letter could be construed as Plaintiff attempting to run a business enterprise.

Karber and Christiansen allegedly continued impeding Plaintiff's attempts to send other outgoing mail. Karber and Christiansen also rejected some of Plaintiff's incoming mail including installments of *1619 Project* in December 2020, and three books in February 2021. Karber purportedly failed to follow policy for rejected mail.

Plaintiff further alleges that ICF officials retaliated against him because of his efforts to write, correspond, and share his work with those outside of the facility. In the fall of 2018, during the months that Plaintiff sought to have his manuscripts sent to third parties, he was also moved to

---

[2] "Mail for the purpose of operating a business enterprise while within the facility" is prohibited by MDOC policy. MDOC Policy Directive 05.03.118, ¶ NN(20); *see also* Mich. Admin. Code R. 791.6603(5)(g). *But see* Mich. Admin. Code R. 791.6603(1)(f).

7

a prison cell that he describes as "defective, filthy and insect infested." (*Id.*, PageID.15.) He alleges that ICF officials use the cell to expose "certain prisoners to foul living conditions." (*Id.*) Later, in the summer of 2019, Plaintiff alleges that he was twice attacked by two different prisoners while he worked on filing a complaint in state court. As a result of the attacks, Plaintiff was placed in a segregation unit where he alleges that he had black mold in his cell, and he was separated from his legal and religious property. Plaintiff discovered that some of his property was missing when he left segregation. At other times, Plaintiff's pens were taken. In fall 2020, Plaintiff was placed on modified grievance access. In April 2021, "Karber improperly wrote and circulated a false charge of 'un-authorized funds' . . . against Plaintiff . . . ." (*Id.*, PageID.24.) Plaintiff asserts that thereafter, the financial service provider used by MDOC removed $534.90 from Plaintiff's prisoner trust account. He also alleges that "Black American" prisoners who clash with ICF staff are labeled as snitches and targeted for violence. Plaintiff further asserts that Defendants Karber and Christiansen continue manipulating what he refers to as the "grey areas" in MDOC policies to reject Plaintiff's outgoing mail.

In his supplemental complaint, Plaintiff alleges that Defendants Karber and Christiansen continue interrupting his mail. Specifically, Plaintiff asserts that he is a creditor in an ongoing class action. He states that the action required votes by class members by December 14, 2021, and the debtor's agents wrote him in November 2021. Karber and Christiansen purportedly interfered with Plaintiff's litigation by referring to the correspondence as a "business transaction" that violates MDOC policy. The amount at issue is purportedly "not less than $[]50,000.00, and not more than $[]2.7 million . . . in the Settlement Plan." (Supp. Compl., ECF No. 8-1, PageID.59.)

Plaintiff seeks declaratory relief, injunctive relief, and damages.

8

**III.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges violations that arise under the First and Fourteenth Amendments

### A. Supervisory Liability

As an initial matter, Plaintiff fails to make specific factual allegations against Defendant Yuhaz, other than his claim that Yuhaz failed to conduct an investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Yuhaz engaged in any active unconstitutional behavior. Plaintiff, therefore, fails to state a claim against him. Accordingly, the Court will dismiss Yuhaz.

### B. Interference With Mail

Plaintiff's complaint contends that Defendants Karber and Christiansen interfered with his incoming and outgoing mail on multiple occasions in violation of his First Amendment rights. The crux of the complaint alleges that his incoming and outgoing mail complied with MDOC policies,

but Karber and Christiansen exploited vague language in the policies to hold and reject his mail. Additionally, Plaintiff argues that, to the extent the policies could be read so broadly as to exclude his mail, those policies run afoul of the First Amendment. He therefore also sues Defendant Washington for declaratory and injunctive relief.

"The First Amendment protects 'the right to receive information and ideas,' which, as applicable in the prison context, extends to the right to receive mail and to access reading material." *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)). Nonetheless, that right is subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). In other words, "[b]ecause lawful incarceration necessarily limits an individual's constitutional rights while in prison, 'a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Bethel*, 988 F.3d at 938 (quoting *Pell v. Procunier*, 482 U.S. 78, 84 (1987)).

When examining whether a prison official's regulation of mail violates the First Amendment, a court evaluates four factors to determine whether the restriction is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers, (2) whether there are alternative means by which the inmate may exercise the right impinged, (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally, and (4) the existence or absence of ready alternatives to the regulation in question. *Turner v. Safley*, 482 U.S. 78, 88–91 (1987).

The Supreme Court instructs that lower courts must give considerable deference to the decisions made by prison officials to establish and apply regulations related to incoming mail. *See Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 126 (1977). Notwithstanding this deference, the Supreme Court has concluded that some prison regulations violate the First Amendment. *See Sheets*, 97 F.3d at 167. For example, the Sixth Circuit has noted that,

> the Supreme Court ha[s] struck down as unconstitutional mail censorship regulations proscribing inmate correspondence that, *inter alia,* "unduly complain[ed]" "magnif[ied] grievances," and expressed "inflammatory political, racial, religious or other views", because they allowed prison officials to apply their own personal prejudices. Th[e Sixth Circuit] ha[s] also ruled that a prison guard's arbitrary interference with prisoner's incoming mail violates the First Amendment, and that prison officials could not withhold personal subscription publications.

*Sheets*, 97 F.3d at 167 (citations omitted).

The Court concludes that at this early juncture, Plaintiff's allegations raise colorable First Amendment claims against Defendants Karber, Christiansen, and Washington.

### C. Retaliation

Plaintiff alleges several retaliation claims related to his placement for 18 years in segregation, the theft of his property, the $534.90 charge to his account, and the disruption of his incoming and outgoing mail.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion his protected conduct motived Defendants to retaliate against him. Indeed, much of the adverse action that Plaintiff complains of appears to be at that hands or direction of ICF or MDOC individuals other than Defendants. Consequently, his speculative allegation fails to state a claim. Accordingly, the Court will dismiss Plaintiff's retaliation claims.

### D.  Access to the Courts

Plaintiff's supplemental complaint alleges that Defendants Karber and Christiansen impeded his participation in the settlement of an ongoing class action. Although the allegations are not altogether clear, Plaintiff asserts that Karber's and Christiansen's interference caused him to lose at least $50,000.00 under the settlement plan.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff does not describe the underlying action in his pleadings; but he does identify it as a class action and he provides a case number: 20-10343 LSS. (Supp. Compl., ECF No. 8-1, PageID.60.) That is the case number for the bankruptcy proceedings filed for Debtor Boy Scouts of America in the United States Bankruptcy Court for the District of Delaware. Because Plaintiff describes himself as a creditor, it is likely that he was not contacted as a member of a certified class, but was instead contacted as a former boy scout and, thus, a potential creditor of the bankruptcy estate. Either way, however, the First Amendment does not protect his access to the courts to pursue a tort claim against a private party as a class member or a creditor. Therefore, Plaintiff has failed to state a claim for violation of his right to access the courts.

### E. Due Process

Plaintiff alleges that Defendants have improperly charged him $534.90, and a variety of his property—including pens, eyeglasses, and religious icons—has been stolen from him in violation of his due process rights.[3]

---

[3] Although it is unclear, the complaint appears to suggest that Plaintiff may also allege that Defendants Karber and Christiansen violated his due process rights when they retained his mail

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. He alleges vaguely that he "is being frustrated or prevented from presenting valid claims . . . ." (Compl., ECF No. 1, PageID.22.) To be certain, the Court does not condone the theft of Plaintiff's personal property. However, Plaintiff has not alleged that state post-deprivation remedies are inadequate. Numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy

---

without notice on several occasions. Plaintiff appears to have received due process even if it was delayed. Crucially, the Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9.

16

Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

Plaintiff does not allege any reason why a state-court action would not afford him the process he is due to challenge the deprivation, either negligent or intentional, of his personal property. Consequently, Plaintiff fails to state a due process claim. Accordingly, Plaintiff's due process claim will be dismissed.

### F.     Equal Protection

Plaintiff further alleges that Defendants violate the Equal Protection Clause of the Fourteenth Amendment "by d[i]scriminating against Black speech at ICF . . . ." (Compl., ECF No. 1, PageID.30.)

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared

17

to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Plaintiff offers little to aid the Court's resolution of his putative equal protection claim. In the complaint, Plaintiff asserts that Defendants "Karber and Christiansen held a personal prejudice against Black Americans" (Compl., ECF No. 1, PageID.9), and that "intelligent Blacks are targeted for harsher or extreme treatments" (*id.*, PageID.26). He also believes that Defendants' conduct is part "of an ongoing historical campaign targeting him as a Black American in ICF." (*Id.*, PageID.27.) Plaintiff further asserts that African Americans who file prison grievances seeking to resolve conflicts with staff are labeled as "snitches," but he suggests that prisoners of other racial groups are not.

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Plaintiff's allegation implies that he and the other prisoners were similarly situated, but he states no facts to support that implication. Absent such allegations, Plaintiff has failed to show that he is similarly situated to the comparators. *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals . . . ."); *see also Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (To be a similarly-situated person, "the comparative [prisoner] 'must have

dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'") (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *Project Reflect, Inc. v. Metro. Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim.").

To the extent that Plaintiff alleges that African Americans who file grievances are labeled as snitches while members of other race groups who file grievances are not, Plaintiff fails to allege how any of the named Defendants are responsible for the conduct. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a claim is asserted without an allegation of how a defendant is responsible for the conduct, the claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). While the Court does not condone labelling any prisoners as snitches, particularly those prisoners who are members of

a historically oppressed racial group, Plaintiff fails to describe how any of the named Defendants played a role in that conduct. His allegations therefore fall far short of the minimal pleading standards related to this conduct under Rule 8. *See* Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Plaintiff's other equal protection claims likewise fail. Although Plaintiff may perceive or believe that he has received disparate treatment, he has not alleged facts sufficient to show any comparators who are similarly situated. Because Plaintiff fails to allege facts to show that any comparators are similarly situated, Plaintiff has failed to state an equal protection claim. Accordingly, the Court will dismiss Plaintiff's equal protection claims.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Yuhaz will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation, access to the courts, due process, and equal protection claims against the remaining Defendants. The following claims remain in the case: Plaintiff's First Amendment interference with mail claims against Defendants Karber, Christiansen, and Washington.

An order consistent with this opinion will be entered.

Dated: July 12, 2022   /s/ Ray Kent
　　　　　　　　　　　Ray Kent
　　　　　　　　　　　United States Magistrate Judge