UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LADON S. CHURN,

    Plaintiff,

v.

HEIDI WASHINGTON, *et al.*,

    Defendants.

_____/

Case No. 1:21-cv-631

Hon. Jane M. Beckering

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by Ladon Churn (referred to as "plaintiff" or "Churn"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Three defendants remain in this case, MDOC Director Heidi Washington and Ionia Correctional Facility (ICF) mailroom staff members Steve Karber and Diane Christiansen. This matter is now before the Court on defendant Washington's motion for summary judgment for lack of exhaustion (ECF No. 33).

    **I.**    **Plaintiff's allegations**

The Court summarized plaintiff's claim against defendant Washington as follows:

> Plaintiff's complaint contends that Defendants Karber and Christiansen interfered with his incoming and outgoing mail on multiple occasions in violation of his First Amendment rights. The crux of the complaint alleges that his incoming and outgoing mail complied with MDOC policies, but Karber and Christiansen exploited vague language in the policies to hold and reject his mail. Additionally, Plaintiff argues that, to the extent the policies could be read so broadly as to exclude his mail, those policies run afoul of the First Amendment. He therefore also sues Defendant Washington for declaratory and injunctive relief.

1

Opinion (ECF No. 10, PageID.79-80). These claims included allegations in plaintiff's supplemental complaint (ECF No. 8-1). *Id*. at PageID.73-74.[1] The Court further started that: "The following claims remain in the case: Plaintiff's First Amendment interference with mail claims against Defendants Karber, Christiansen, and Washington." *Id*. at PageID.89.

## II.  Legal standard

### A.  Summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

---

[1] The Court notes that while the Clerk was directed "the proposed supplemental complaint (ECF No. 8-1) as Plaintiff's first supplemental complaint", this document was docketed as plaintiff's "*First amended complaint*" (ECF No.12).

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

> **B.      Lack of Exhaustion**
>
> **1.      Exhaustion requirement**

Defendant Washington contends that plaintiff failed to exhaust his claims against them. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

3

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ Q and S.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III. Discussion

Defendant Washington contends that plaintiff did not exhaust a grievance against her stating,

> A review of the grievances identified in Churn's complaint shows that, although he had filed many grievances naming Karber or Christiansen at Step I, he did not file any grievance naming Director Washington or otherwise identifying Director Washington at Step I.

Defendant's Brief (ECF No. 34, PageID.183) (footnote omitted).

4

Plaintiff points out that he was on modified grievance access at the time and contends that he exhausted his claim against defendant Washington using the available procedures. *See* Plaintiff's Response (ECF No. 39, PageID.327-331). Policy Directive 03.02.130 ¶ MM (eff. March 18, 2019) states that a prisoner on modified access may file grievances as follows:

> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph J. The Warden, FOA Region Manager, or Manager of the Grievance Section may extend the prisoner's or parolee's modified access status for not more than an additional 30 days for each violation. Notification of such extensions shall be consistent with the requirements set forth in Paragraphs KK and LL.

Policy Directive 03.02.130 ¶ MM. If a plaintiff on modified access followed the procedure set out in ¶ MM, and the MDOC denied a request for a grievance form, then "that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted." *Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446 (6th Cir. 2005).

Here, plaintiff presented copies of two written requests for grievances which he wrote while on modified access and which included "Washington" as a party. *See* Grievance Form Requests (April 20, 2021) (ECF Nos. 39-3 and 39-4). While it appears that plaintiff requested grievance forms as allowed under ¶ MM, neither of his requests relate to filing a grievance against defendant Washington for violating his rights under the First Amendment as alleged in the complaint. The issue in one request (ECF No. 39-3) involved asking for "pen(s)", *i.e.*, "not being

5

provided adequate writing materials, i.e., pen(s), to litigate valid issues, e.g., speech, mails, (etc)." The issue in the other request (ECF No. 39-4) involved "corruption", *i.e.*, "Ongoing staff corruption targeting Black Americans who seek admn. Relief at ICF-MDOC." Based on this record, plaintiff did not exhaust a grievance against defendant Washington regarding his claim in this lawsuit, *i.e.*, that Washington's mail policies violate the First Amendment. *See Walker*, 128 Fed. Appx. at 446.

### IV. Recommendation

Accordingly, I respectfully recommend that defendant Washington's motion for summary judgment on the basis of exhaustion (ECF No. 33) be **GRANTED**.

Dated:  April 11, 2024                               /s/ Ray Kent
                                                     RAY KENT
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).